```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------X
JAMIE PORTILLO,                                    :

                Plaintiff,                         :    REPORT AND
                                                        RECOMMENDATION
        -v.-                                       :
                                                        16 Civ. 4731 (VEC) (GWG)
                                                   :
JENNIFER WEBB, MANUEL ALDIR, and
LYCHA GASANOV                                      :

                Defendants.                        :
---------------------------------------------------------------X
```
**GABRIEL W. GORENSTEIN, UNITED STATES MAGISTRATE JUDGE**

Plaintiff Jamie Portillo, currently an inmate at the Coxsackie Correctional Facility in Coxsackie, New York, brings this lawsuit pro se pursuant to 42 U.S.C. § 1983, making claims regarding an incident that occurred while he was being transported from a medical clinic at Rikers Island to East Elmhurst Hospital. The defendants have moved to dismiss the complaint for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6).[1] For the reasons stated below, the motion to dismiss should be granted, with Portillo given leave to file an amended complaint as to his claim of excessive force.

I. BACKGROUND

For the purpose of deciding the defendants' motion to dismiss, the Court assumes the allegations in Portillo's complaint are true and draws all reasonable inferences in his favor. See, e.g., Brown Media Corp. v. K&L Gates, LLP, 854 F.3d 150, 156-57 (2d Cir. 2017).

---

[1] See Notice of Motion, filed Mar. 3, 2017 (Docket # 23); Defendants' Memorandum of Law in Support of Their Motion to Dismiss the Amended Complaint, filed Mar. 3, 2017 (Docket # 24); Plaintiff Opposition to Defendant's Motion [to] Dismiss Action, filed May 11, 2017 (Docket # 29) ("Pl. Opp'n"); Defendants' Reply Memorandum of Law in Further Support of Their Motion to Dismiss the Amended Complaint, filed June 1, 2017 (Docket # 32) ("Defs. Reply").

On a motion to dismiss for failure to state a claim, a court's

> consideration is limited to the factual allegations in [the complaint], which are accepted as true, to documents attached to the complaint as an exhibit or incorporated in it by reference, to matters of which judicial notice may be taken, or to documents either in plaintiff['s] possession or of which plaintiff[ ] had knowledge and relied on in bringing suit.

Brass v. Am. Film Tech., 987 F.2d 142, 150 (2d Cir. 1993) (citing Cortec Indus., Inc. v. Sum Holding L.P., 949 F.2d 42, 47-48 (2d Cir. 1991)); accord Halebian v. Berv, 644 F.3d 122, 130 n.7 (2d Cir. 2011). Furthermore, in light of Portillo's pro se status, the Court has considered factual allegations contained in his submissions opposing the defendants' motion where they amplify claims made in the complaint. See, e.g., London v. N.Y. State Dep't of Homeless Servs., 2014 WL 3720401, at *1 (S.D.N.Y. July 29, 2014) (considering factual allegations from pro se plaintiff's opposition submissions when deciding motion to dismiss); Woods v. Goord, 2002 WL 731691, at *1 n.2 (S.D.N.Y. Apr. 23, 2002) (considering pro se prisoner's factual allegations in briefs as supplementing complaint); Burgess v. Goord, 1999 WL 33458, at *1 n.1 (S.D.N.Y. Jan. 26, 1999) ("In general, a court may not look outside the pleadings when reviewing a Rule 12(b)(6) motion to dismiss. However, the mandate to read the papers of pro se litigants generously makes it appropriate to consider plaintiff's additional materials, such as his opposition memorandum.") (citations and internal quotation marks omitted) (quoting Gadson v. Goord, 1997 WL 714878, at *1 n.2 (S.D.N.Y. Nov. 17, 1997)).

On October 13, 2015, while detained at the Anna M. Kross Correctional Facility ("A.M.K.C.") on Rikers Island, New York, Portillo collapsed in the hallway from "a mild stroke." Amended Complaint, filed Nov. 28, 2016 (Docket # 17) ("Am. Compl."), at 4; Jamie Portillo Medical Records, dated Oct. 13, 2015 (attached to Pl. Opp'n) ("Medical Records"). A doctor who reported to the scene said Portillo had lost consciousness and had facial numbness,

"facial droop", and weakness in his right leg. Medical Records. Portillo says that, despite explaining to corrections officers that he could not walk, he was forced to walk to the medical clinic at A.M.K.C., which caused him to fall and injure himself. Am. Compl. at 4. Portillo does not explain who was present during this incident, who forced him to walk, or how he was injured.

Portillo was then placed in shackles and handcuffs and taken to East Elmhurst Hospital, escorted by Corrections Officers ("C.O.s") Jennifer Webb, Manuel Aldir, and Lycha Gasanov. Id. Portillo claims that he was again forced to walk, despite repeatedly telling the officers and a doctor at the hospital that he was unable to do so. Id.; Pl. Opp'n at 1.[2] Portillo said that he was dizzy, his vision was blurry, and all he remembered was being dragged by his arms in the hospital. Am. Compl. at 4. He asserts that a doctor and C.O. Webb picked Portillo up by the arms and "let him go," which caused Portillo to fall face-first and injure himself. Id. He alleges the fall caused him to injure his ankles, face, arms, nose, stomach, temple, back, and neck. Pl. Opp'n at 1-2. He alleges that x-rays and other tests were conducted, and that he was given medication for his injuries. Am. Compl. at 5. Portillo later complained that his ankles were "swollen and bruised from being shackled when he was transported to the hospital on October 13," and that "[h]e ha[d] had trouble walking from the ankle injuries since that date." See Email from Agnes Baik, undated (attached to Pl. Opp'n) ("Baik Letter"). He alleges that C.O.s Aldir and Gasanov "did nothing to help [Portillo] or the situation" while he was forced to walk or when he was dropped by C.O. Webb, "they just watched and laughed." Am. Compl. at 4-5.

Construed liberally, Portillo's claims are that (1) C.O. Webb used excessive force against

---

[2] Portillo's motion papers do not specify which of the officers "forced him to walk." Pl. Opp'n at 1, 4.

him, based on his fall in the hospital; and (2) C.O.s Gasanov and Aldir either failed to intervene while he was being "forced to walk" by C.O. Webb or were deliberately indifferent to his medical needs.

II. APPLICABLE LAW

   A. Standard for Motion to Dismiss

A defendant may move to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) where the plaintiff "fail[s] to state a claim upon which relief can be granted." To survive such a motion, a complaint must contain sufficient factual matter, accepted as true, to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (internal quotation marks omitted) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). As the Supreme Court noted in Iqbal,

> A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. The plausibility standard is not akin to a "probability requirement," but it asks for more than a sheer possibility that a defendant has acted unlawfully.

Id. (citations omitted). "[W]here the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct," a complaint is insufficient under Federal Rule of Civil Procedure 8(a) because it has merely "alleged — but it has not shown — that the pleader is entitled to relief." Id. at 679 (brackets and internal quotation marks omitted) (quoting Fed. R. Civ. P. 8(a)(2)).

Pro se plaintiff filings are liberally construed, and "a pro se complaint, however inartfully pleaded, must be held to less stringent standards than formal pleadings drafted by lawyers." Erickson v. Pardus, 551 U.S. 89, 94 (2007) (per curiam) (citations and internal quotation marks omitted); accord Littlejohn v. City of New York, 795 F.3d 297, 322 (2d Cir. 2015); see also Hill

v. Curcione, 657 F.3d 116, 122 (2d Cir. 2011) (review of pro se complaint for sufficiency requires "special solicitude, interpreting the complaint to raise the strongest claims that it suggests") (citation, brackets, and internal quotation marks omitted). However, even the pleadings of these plaintiffs "must contain factual allegations sufficient to raise a right to relief above the speculative level." Dawkins v. Gonyea, 646 F. Supp. 2d 594, 603 (S.D.N.Y. 2009) (internal quotation marks omitted) (quoting Twombly, 550 U.S. at 555); accord Ford v. Rodriguez, 2016 WL 6776345, at *2 (S.D.N.Y. Nov. 16, 2016).

  B. 42 U.S.C. § 1983

"To state a claim under § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." West v. Atkins, 487 U.S. 42, 48 (1988); see 42 U.S.C. § 1983. Section 1983 does not create any federal rights; rather, it provides a mechanism to enforce rights established elsewhere. Gonzaga Univ. v. Doe, 536 U.S. 273, 285 (2002); accord Ross v. Woods, 412 F. App'x 392, 393 (2d Cir. 2011) (summary order). Additionally, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Victory v. Pataki, 814 F.3d 47, 67 (2d Cir. 2016) (internal quotation marks omitted) (quoting Farrell v. Burke, 449 F.3d 470, 484 (2d Cir. 2006)); see also Iqbal, 556 U.S. at 672 ("In a § 1983 suit . . . . Absent vicarious liability, each Government official, his or her title notwithstanding, is only liable for his or her own misconduct.").

    1. Excessive Force

"[T]he right of pretrial detainees to be free from excessive force amounting to punishment is protected by the Due Process Clause of the Fourteenth Amendment." United

5

States v. Walsh, 194 F.3d 37, 47 (2d Cir. 1999) (citing Bell v. Wolfish, 441 U.S. 520, 535 (1979)).³ At one time, a pretrial detainee asserting an excessive force claim had to satisfy a subjective and objective element similar to what is required to prove an Eighth Amendment claim. Id. at 47-48. Specifically, a plaintiff had to show that the alleged wrongdoing was "objectively sufficiently serious or harmful enough" to cause a constitutional violation, "contrary to contemporary standards of decency and repugnant to the conscience of mankind," id. at 50 (citations and internal quotation marks omitted), and that the alleged wrongdoer subjectively "had the necessary level of culpability, shown by actions characterized by wantonness in light of the particular circumstances surrounding the challenged conduct," Sims v. Artuz, 230 F.3d 14, 21 (2d Cir. 2000) (citations and internal quotation marks omitted).

In Kingsley v. Hendrickson, 135 S. Ct. 2466 (2015), however, the Supreme Court held that when force is "purposefully or knowingly" used against a pretrial detainee, the detainee must show only that the force "was objectively unreasonable." Id. at 2473. Kingsley thus altered the test previously used in the Second Circuit for claims arising under the Fourteenth Amendment. See Ross v. Corr. Officers John and Jane Does 1-5, 610 F. App'x 75, 76 n.1 (2d Cir. 2015) (summary order); Vargas v. City of New York, 2017 WL 1214434, at *12 (E.D.N.Y. Mar. 31, 2017); Carmona v. City of New York, 2016 WL 4401179, at *2 (S.D.N.Y. Mar. 1, 2016); see also Darnell v. Pineiro, 849 F.3d 17, 35 (2d Cir. 2017) (recognzing that Kingsley has overruled Second Circuit law in the Fourteenth Amendment "deliberate indifference" context).

---

³ We assume that Portillo was a pretrial detainee and not a convicted prisoner on the date of the incident, October 13, 2015, because he made no assertion that he was "convicted" in his original complaint but did make such an assertion when he filed his amended complaint on November 18, 2016. Am. Compl. at 2, 6. Defendants additionally do not appear to oppose this assumption. See Defs. Reply at 4 n.1 (acknowledging that "[i]t is unclear . . . whether Plaintiff was a pretrial detainee" when the incident occurred).

6

Kingsley held that

> objective reasonableness turns on the facts and circumstances of each particular case. A court must make this determination from the perspective of a reasonable officer on the scene, including what the officer knew at the time, not with the 20/20 vision of hindsight. A court must also account for the legitimate interests that stem from the government's need to manage the facility in which the individual is detained, appropriately deferring to policies and practices that in the judgment of jail officials are needed to preserve internal order and discipline and to maintain institutional security.

Kingsley, 135 S. Ct. at 2473 (citations, brackets, and internal quotation marks omitted) (quoting Graham v. Connor, 490 U.S. 386, 396 (1989); and Bell, 441 U.S. at 540, 547). Factors to consider in judging the objective reasonableness of a use of force include:

> the relationship between the need for the use of force and the amount of force used; the extent of the plaintiff's injury; any effort made by the officer to temper or to limit the amount of force; the severity of the security problem at issue; the threat reasonably perceived by the officer; and whether the plaintiff was actively resisting.

Id.; accord Perez v. Ponte, 236 F. Supp. 3d 590, 621 (E.D.N.Y. 2017); Carmona, 2016 WL 4401179, at *2.

### 2. Failure to Intervene

"It is widely recognized that all law enforcement officials have an affirmative duty to intervene to protect the constitutional rights of citizens from infringement by other law enforcement officers in their presence." Terebesi v. Torreso, 764 F.3d 217, 243 (2d Cir. 2014) (internal quotation marks omitted) (quoting Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994)). As such, an officer who fails to intervene where he or she observes or has reason to know that excessive force is being used or a constitutional violation has been committed by a fellow officer is liable for the preventable harm caused by that officer. Anderson, 17 F.3d at 557; accord Porter v. Goord, 467 F. App'x 21, 23 (2d Cir. 2012) (summary order); Baines v.

7

City of New York, 2017 WL 3425746, at *2 (S.D.N.Y. Aug. 9, 2017).  Although liability may attach only where there was "a realistic opportunity to intervene to prevent the harm from occurring," Anderson, 17 F.3d at 557, "[w]hether an officer had sufficient time to intercede or was capable of preventing the harm being caused by another officer is an issue of fact for the jury unless, considering all the evidence, a reasonable jury could not possibly conclude otherwise," id.; accord Terebesi, 764 F.3d at 243-44; Stephens v. Venettozzi, 2016 WL 929268, at *11 (S.D.N.Y. Feb. 24, 2016); Bowen v. Patrick, 2012 WL 3743409, at *7 (S.D.N.Y. Aug. 29, 2012).

        3.  Deliberate Indifference

A prisoner may make a constitutional claim arising out of medical treatment where he or she can show "deliberate indifference" to his or her medical needs.

> [D]eliberate indifference to serious medical needs of prisoners constitutes the unnecessary and wanton infliction of pain proscribed in the Eighth Amendment. This is true whether the indifference is manifested by prison doctors in their response to the prisoner's needs or by prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed.

Estelle v. Gamble, 429 U.S. 97, 104-05 (1976) (citations, footnotes, and internal quotation marks omitted); accord Spavone v. N.Y. State Dep't of Corr. Servs., 719 F.3d 127, 138 (2d Cir. 2013).

A pretrial detainee enjoys similar protections under the Due Process Clause of the 14th Amendment.  See Darnell, 849 F.3d at 29.  To establish that a prison official was deliberately indifferent toward an inmate's health, a pretrial detainee must satisfy two prongs: (1) "an 'objective prong' showing that the challenged conditions were sufficiently serious to constitute objective deprivations of the right to due process"; and (2) "a 'subjective prong' — perhaps

8

better classified as a 'mens rea prong' or 'mental element prong' — showing that the officer acted with at least deliberate indifference to the challenged conditions." Id.

Under the objective prong, the alleged medical need must be "sufficiently serious." Hathaway v. Coughlin, 37 F.3d 63, 66 (2d Cir. 1994) (citation and internal quotation marks omitted). A "sufficiently serious" medical need is "a condition of urgency, one that may produce death, degeneration, or extreme pain." See id. (citation and internal quotation marks omitted). "Factors that have been considered include the existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain." Chance v. Armstrong, 143 F.3d 698, 702 (2d Cir. 1998) (citations, brackets, and internal quotation marks omitted).

As with claims of excessive use of force, the Supreme Court's decision in Kingsley altered the subjective prong where a claim is made by a pretrial detainee. See Darnell, 849 F.3d at 34-35 ("Following the Supreme Court's analysis in Kingsley, there is no basis for the reasoning . . . that the subjective intent requirement for deliberate indifference claims under the Eighth Amendment . . . must apply to deliberate indifference claims under the Fourteenth Amendment."). Now,

> to establish a claim for deliberate indifference to conditions of confinement under the Due Process Clause of the Fourteenth Amendment, the pretrial detainee must prove that the defendant-official acted intentionally to impose the alleged condition, or recklessly failed to act with reasonable care to mitigate the risk that the condition posed to the pretrial detainee even though the defendant-official knew, or should have known, that the condition posed an excessive risk to health or safety. In other words, the "subjective prong" (or "mens rea prong") of a deliberate indifference claim is defined objectively.

9

Id. at 35; accord Brown v. City of New York, 2017 WL 1390678, at *11 (S.D.N.Y. Apr. 17, 2017). As was previously true, there is no liability for "negligently inflicted harm." Kingsley, 135 S. Ct. at 2472 (emphasis and internal quotation marks omitted) (quoting Cty. of Sacramento v. Lewis, 523 U.S. 833, 849 (1998)); accord Darnell, 849 F.3d at 36.

III. DISCUSSION

Portillo's description of the circumstances in which he fell is vague and not entirely consistent. In his amended complaint he states that he was in shackles and handcuffs when he reached the hospital, and that after he explained to C.O. Webb and a doctor at the hospital that he could not walk, "they picked me up, let me go and I immediately fell causing me to injure myself" and that at this time he was being "dragged" by his arms. Am. Compl. at 4. In his opposition to defendants' motion he claims that the officers escorting him "forcefully took plaintiff against his will by the arms while shackled by the hands and feet, and 'forced him to walk', to wit, then plaintiff fell face forward." Pl. Opp'n at 1.

The circumstances under which Portillo fell to the floor are critical to determining whether he has stated an excessive force claim. At the time he was being transported, Portillo had had a "minor stroke." See Am. Compl. at 4. The external symptoms of the stroke and the officers' knowledge of the diagnosis are not clear from the complaint, however. Thus it is not clear that "forcing [Portillo] to walk" would cause him any serious harm. Cf. Jones v. Westchester Cty., 182 F. Supp. 3d 134, 141, 151 (S.D.N.Y. 2016) (excessive force claim stated where plaintiff had suffered injury to knee, hip, and lower back from fall and corrections officers forced him to walk though they knew he was in severe pain). Without the officers' having knowledge that being forced to walk could cause serious harm, the mere act of "forcing" plaintiff to walk could not support a claim of excessive force. See, e.g., D'Attore v. City of New

10

York, 2013 WL 1180395, at *6 (S.D.N.Y. Mar. 15, 2013) (no excessive force claim where officer transported wheelchair-bound inmate down hallway in reckless and violent manner), appeal dismissed, No. 15-1722 (2d Cir. Jul. 28, 2015); Prescott v Riker Island Med. Staf., 2011 WL 1435218, at *6 (S.D.N.Y. Apr. 12, 2011) (motion to dismiss granted where plaintiff "at most" showed shoves, pushes, and shackling during transport from hospital to Rikers "may have caused some aggravation to [plaintiff's] pre-existing injuries").

Of more significance are the circumstances under which C.O. Webb and the doctor were responsible for Portillo falling to the ground. Portillo's allegations, however, do not show that C.O. Webb and the doctor deliberately or even recklessly dropped Portillo to the floor. See, e.g., Jones, 182 F. Supp. 3d at 152; Goodwine v. Nat'l R.R. Passenger Corp., 2014 WL 795756, at *2, *9 (E.D.N.Y. Feb. 27, 2014); Pooler v. Hempstead Police Dep't; 897 F. Supp. 2d 12, 26 (E.D.N.Y. 2012). Portillo's descriptions of the incident say only that he was "let . . . go" or that because he was forced to walk, "to wit, then plaintiff fell face forward." Am. Compl. at 4. Pl. Opp'n at 1. To be sure, Portillo's allegations that the fall caused "injuries" to his head, neck, face, arm, and leg distinguish Portillo's claim from cases in which no discernible physical injury resulted from the use of force. Cf. Arnold v. Westchester Cty., 2012 WL 336129, at *7 (S.D.N.Y. Feb. 3, 2012) ("forced fall" allegedly caused by officers making shackled pretrial detainee walk quickly down hallway not constitutional violation where inmate did not claim the fall caused him any notable physical injury). Portillo, however, gives no explanation of the nature of his injuries. See Am. Compl. at 4.

In light of these deficiencies, the Court cannot conclude that the complaint shows that C.O. Webb used excessive force.

It is clear, however, that Portillo has not stated a failure to intervene claim against C.O.s Aldir and Gasanov. Even if Portillo's pleading showed that the fall to the ground was the result of excessive force — a prerequisite to a failure to intervene claim, see, e.g., Walker v. City of New York, 2014 WL 12652345, at *12 (E.D.N.Y Sept. 3, 2014) ("To prevail on a failure to intervene claim a plaintiff must demonstrate the existence of an underlying constitutional violation in which the defendant officer failed to intervene.") (collecting cases), aff'd, 638 F. App'x 29 (2d Cir. 2016) — the allegations do not suggest that C.O.s Aldir and Gasanov had "a realistic opportunity to intervene to prevent the harm from occurring," Anderson, 17 F.3d at 557. In the absence of such an opportunity, they cannot be liable for any failure to intervene.

To the extent that Portillo intended to raise a claim that C.O.s Webb, Aldir, or Gasanov were deliberately indifferent to his medical needs, such a claim must also be dismissed. Portillo concedes that the officers were taking him to a hospital to receive treatment for his stroke. See generally Am. Compl. at 4. It may be that Portillo intended to claim that defendants failed to offer him "adequate medical attention" for his inability to walk. See Pl. Opp'n at 2. Assuming arguendo that the temporary inability to walk is a sufficiently serious medical condition, Portillo's pleadings do not allege facts from which a reasonable person could believe defendants knew or should have known that a "substantial risk of serious harm" existed simply because they required Portillo to walk to a hospital bed after a mild stroke. To the extent Portillo claims defendants should have provided him with a wheelchair, see Pl. Opp'n at 2, this is best characterized as a disagreement as to the method of addressing his inability to walk, and thus not grounds for a section 1983 claim. See Chance, 143 F.3d at 703 ("It is well-established that mere disagreement over the proper treatment does not create a constitutional claim."); accord

Washington v. Artus, — F. App'x —, 2017 WL 3911573, at *2 (2d Cir. Sept. 7, 2017). To the extent defendants were negligent, no Eighth or Fourteenth Amendment claim can arise from such negligence. See Farmer v. Brennan, 511 U.S. 825, 835-36 (1994); accord Darnell, 849 F.3d at 36.

Notwithstanding the defects in the complaint, the Second Circuit has stated that courts should not dismiss pro se complaints "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." Cuoco v. Moritsugu, 222 F.3d 99, 112 (2d Cir. 2000) (citations and internal quotation marks omitted); accord Pearson v. Reid-Robinson, 632 F. App'x 19, 19 (2d Cir. 2016) (summary order); see also Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (leave to file amended complaint should not be denied absent evidence of undue delay, bad faith, undue prejudice to non-movant, or futility) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)). Although Portillo has amended his complaint once, he did so at a time when he was unaware of the potential defects in his claims. While the Court sees no cure that can be made to the failure-to-intervene and deliberate indifference claims, it is possible that the excessive force claim could withstand a motion to dismiss if pled with appropriate facts.

IV. CONCLUSION

For the reasons stated above, defendant's motion to dismiss (Docket # 23) should be granted. Portillo should be permitted 21 days to file a second amended complaint in the event he believes that he can cure the defects in his excessive force claim.

The Court notes also that a record attached by plaintiff to his motion papers states that he is a "monolingual Spanish Speaker." Baik Letter. Any amended filing must contain a clear explanation that the new amended complaint was composed by Portillo and that it has been

accurately translated.

## PROCEDURE FOR FILING OBJECTIONS TO THIS
## REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties have fourteen (14) days (including weekends and holidays) from service of this Report and Recommendation to file any objections. See also Fed. R. Civ. P. 6(a), (b), (d). A party may respond to any objections within 14 days after being served. Any objections and responses shall be filed with the Clerk of the Court, with copies sent to the Hon. Valerie E. Caproni at 40 Foley Square, New York, New York 10007. Any request for an extension of time to file objections or responses must be directed to Judge Caproni. If a party fails to file timely objections, that party will not be permitted to raise any objections to this Report and Recommendation on appeal. See Thomas v. Arn, 474 U.S. 140 (1985); Wagner & Wagner, LLP v. Atkinson, Haskins, Nellis, Brittingham, Gladd & Carwile, P.C., 596 F.3d 84, 92 (2d Cir. 2010).

Dated: October 11, 2017
New York, New York

GABRIEL W. GORENSTEIN
United States Magistrate Judge

Copy sent to:

Jamie Portillo
16-A-4805
Coxsackie Correctional Facility
B-3-31
P.O. Box 999
Coxsackie, NY 12051-0999

Counsel by ECF